UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PHILLIPS *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>PILGRIM CREEK ESTATES HOMEOWNERS ASSOCIATION,<br><br>　　　　　　　　　Defendant. | Case No.: 19-CV-102-AJB(WVG)<br><br>**REPORT AND RECOMMENDATION RE: ENFORCING SETTLEMENT AGREEMENT AND ENTERING JUDGMENT**<br><br>**[Doc. No. 29.]** |

After, having reached agreement to settle this case and placed the material terms on the record before this Court, *pro se* Plaintiff Jeffrey Phillips has continuously attempted to quibble and alter the settlement terms he clearly agreed to be bound by on multiple occasions. Although this Court has extensively discussed these issues with the parties for multiple hours over multiple in-person conferences and teleconferences, Phillips persists in obstructing the finalization of settlement in this case by refusing to sign a draft settlement agreement that all other parties agree accurately reflects the oral settlement on the record. Defendant now moves to compel enforcement of the settlements, and co-Plaintiff June Phillips—Jeffrey's own mother—joins Defendant's motion. As explained below, this Court RECOMMENDS that the Court grant Defendant's motion without an evidentiary hearing, impose sanctions, award attorneys' fees, enter final Judgment, and close the case.

1

## I. BACKGROUND

Defendant Pilgrim Creek Estates Homeowners Association is a planned development, consisting of 203 single-family homes. Defendant is a senior citizen housing community that requires that one occupant of each lot is a senior citizen who is 55 years of age or older. All other occupants must be a qualified permanent resident or a permitted health care resident, as those terms are defined in the Second Restated Declaration of Covenants, Conditions and Restrictions.

Plaintiff Jeff Phillips is the trustee of the Phillips Family Trust, the owner of a home within Defendant. In mid-2015, Jeffrey Phillips's father, who resided with Plaintiff June Phillips passed away. Later in 2015, Jeffrey Phillips moved into the home, presumably to assist his mother, co-Plaintiff June Phillips.

Since 2016, Plaintiffs have requested that a reasonable accommodation be made to allow them to park vehicles overnight on the street. After failed mediation attempts, Plaintiffs filed a Complaint alleging three causes of action for (1) Violation of the Fair Housing Act, (2) Violation of California Fair Employment and Housing Act and (3) Violation of California.

June and Jeffrey Phillips were initially represented by the same attorney until August 8, 2019, when the Court granted their counsel's motion to withdraw as Jeffrey's attorney and to continue representing June. (Doc. No. 22.) Since then, Jeffrey has proceeded *pro se* in this matter and continues to do so. Prior to August 8, counsel represented Jeffrey during two settlement conferences on March 18, 2019 and May 9, 2019.

The March 18, 2019 settlement conference was in-person and all parties attended. The parties—including Jeffrey—negotiated a partial settlement of the case, agreeing to certain non-monetary terms. The Court placed the terms of that settlement on the record, the transcript of which appears on the docket as entry number 10. The specific non-monetary terms of the settlement were:

1. "'An order forcing the Homeowners Association to grant plaintiffs' request for a reasonable accommodation to park Plaintiff Jeff Phillips' vehicle on the street at their

2

1 home.' The accommodation that the Homeowners Association has provided is to park on Pilgrim Way next to the pool and the clubhouse, the third parking spot." The parking spot would be designated "reserved" for Plaintiffs by having "'reserved' painted in the parking space area." Defendant agreed to complete this project within 10 days of March 18, 2019. (Doc. No. 10 at 3-4.)

2. Although Defendant's representatives did not admit to past retaliatory activities, they agreed to "'[a]n order to cease and desist from all retaliatory actions, such as fines and citations.'" However, if Plaintiff's violated the HOA's CC&Rs, then the HOA board could take appropriate enforcement action. (*Id.* at 4-5.)

3. "'An order restoring plaintiffs' access to all common areas.'" This included returning to Plaintiffs their keys to common areas. (*Id.* at 5-6.)

4. "'An order compelling the Homeowners Association to rescind any fines or citations, and correcting homeowner records to remove such entries.'" This provision also required Defendant to "refund fine money that has been previously paid." (*Id.* at 6-7.)

5. "'[A]n order compelling the Homeowners Association to remove any derogatory credit remarks [to the extent any such remarks existed].'" (*Id.* at 8.)

6. "'An order to adopt written policies and procedures to handle reasonable accommodation requests.'" (*Id.* at 8.)

7. "'An order requiring training of Homeowners' management personnel.'" (*Id.* at 9.)

After listing these non-monetary terms, the Court confirmed that all parties understood the terms and agreed to be bound by them. Specifically, Jeffrey stated he understood and agreed to be bound by the terms. (*Id.* at 12:2-8.) However, given that this was only a partial settlement, the Court ordered the parties to appear for a second in-person settlement conference.

The Court convened the second settlement conference on May 9, 2019 with all parties present again, including Jeffrey Phillips. Although the parties did not reach agreement on a monetary amount to resolve the case, they addressed issues that had come

up with the delayed implementation of some of the terms from the first settlement conference. The parties negotiated further resolution of these terms, and the Court placed the clarified terms on the record. (*See* Doc. No. 16.) Specifically, Defendant had calculated that the total fine amount that it previously agreed to reimburse Plaintiffs was $1,800; the parties agreed that the "reserved" spot painting could wait until after a third party repaved the property's roads and parking lots, which included the reserved parking spot; and Defendant agreed there would be no further rules violations notices issued for potted plants on Plaintiffs' property. There were no new agreements placed on the record—just refinements and clarifications of terms reached at the first settlement conference. Jeffrey Phillips expressed his understanding and agreement on the record. (Doc. No. 16 at 7-8.)

The Court convened the third in-person settlement conference on September 10, 2019, and all parties, including Jeffrey Phillips, were again present. (*See* Doc. No. 25.) At this conference, the parties agreed to monetary terms to finally complete the resolution of this case. Specifically, Defendant agreed to the following two additional terms (numbering continued from the list above):

8. Defendant agreed to compensate Plaintiffs the amount of $70,000; and

9. The compensation would be apportioned as follows: (a) $25,000 paid to Steven Derby and/or his firm Derby, McGuinness & Goldsmith and (b) $45,000 paid to Plaintiff June Phillips.

(*Id.* at 4.) As part of the process of confirming the terms of the global settlement, this Court addressed Jeffrey specifically to confirm that he understood the terms of the monetary terms above, that the global settlement included the non-monetary terms reached in the two prior settlement conferences, that he agreed to be bound by all of these terms, and that by agreeing to these terms the litigation would be concluded. (*Id.* at 5-6.) In each instance, Jeffrey stated that he understood and agreed, thus once again agreeing to be bound by the non-monetary terms from the prior settlements. (*Id.*)

Unfortunately, the litigation did not conclude there, as Jeffrey has refused to sign a settlement agreement with the above terms and has continued to attempt to modify the

4

agreement. Since the third settlement conference, this Court has held two settlement disposition conferences on October 29, 2019 and November 18, 2019 during which the Court spent nearly two hours attempting to resolve the stalemate between the parties in signing a settlement agreement.

At the October 29, 2019 settlement disposition conference, the Court's aim was to determine what the holdup was in finalizing settlement and filing a joint motion to dismiss the case. The Court learned that the holdup was Jeffrey Phillips's continuing quibbling about minutia and attempting to alter the terms of the settlement. However, both defense counsel and June Phillips's counsel agreed that the settlement agreement defense counsel had drafted accurately set forth all the terms of the settlement. (*See* Doc. No. 39 at 9:6-10.) To resolve the holdup, defense counsel had proposed attaching the transcripts of the three settlements to the settlement agreement—a proposal that was abandoned later on the teleconference in favor of adding to the agreement an attachment with the terms laid out in list format. (*Id.* at 30-31.) In this regard, to simplify and delineate the terms of the settlement, defense counsel had created an "attachment A" to the settlement that set forth the following nine terms:

> 1. Defendant PILGRIM CREEK HOMEOWNERS ASSOCIATION ("HOA") shall permit Plaintiff JUNE PHILLIPS to park a single car in her garage at her residence as a reasonable accommodation for her disability;
>
> 2. HOA shall provide Plaintiff JEFF PHILLIPS with a single parking stall marked "Reserved" in reflectorized paint on the spot and with a sign at the head of the spot stating "Reserved" with no other information. The spot shall be located on Pilgrim Way next to the pool;
>
> 3. HOA agrees to cease and desist from any retaliatory actions against Plaintiffs now or in the future. However, HOA reserves the right to enforce the CC&R's in a fair and even-handed manner;
>
> 4. HOA will restore, to the extent not already restored, Plaintiffs' access to all common areas;

  5. HOA has rescinded all fines and citations and has corrected homeowner records to remove such entries;

  6. HOA has returned the sum of $1,800 to homeowners representing fines levied for "potted plant" citations;

  7. HOA represents that there are no derogatory credit remarks owing to fines or citations issued by them but if any such should be discovered, HOA will have them removed or reversed upon Plaintiffs' written request within 30 days of such request;

  8. HOA has adopted written policies and procedures (attached as Exhibit "B") which have already been implemented and will continue to be adhered to by HOA; and

  9. HOA will annually train all HOA Board members and management personnel on these written policies and procedures.

("Attachment 'A' to Settlement Agreement and Release Agreement," Ex. 1 to Burfening Decl., Doc. No. 29-1 at 17.)[1] June Phillips's attorney concurred that this attachment accurately reflected the material terms of the settlement that had been placed on the record. The Court reviewed each of these terms on the record and likewise confirmed that the attachment's accurate recitation of the terms reached before this Court. (*Id.* at 35-39.) The Court discussed other matters at length and set a second deadline to file a joint motion to dismiss and scheduled another settlement disposition conference.

---

[1] The only difference between this nine-point list and the seven terms this Court set forth on the record and summarized herein above is the inclusion of item 1 and item 6 in the attachment. However, these were not additional terms not contemplated by the parties. Item 1 simply makes explicit that the HOA agreed to provide the Phillips household a reserved parking spot (Item 2), which was necessary to allow parking of one car inside the Phillips garage rather than two cars. Item 1 is not an additional term; it is simply a requisite predicate to item 2. Item 1 was contemplated by all parties and is not in dispute.

  Item 6 was combined in the Court's recitation of terms as term 4—that the HOA would rescind any fines and citations *and* then refund any fines already paid. While the Court combined these two in its recitation, defense counsel separately listed them in the attachment.

At the second settlement disposition conference on November 18, 2019, the Court yet again queried why a joint motion to dismiss had not been filed. Despite the Court's efforts at the last teleconference, Jeffrey continued to quibble and seek unnecessary clarification about matters that didn't need to be clarified. Jeffrey informed the Court the parties were close to signing the settlement agreement and just had two more points to clarify. (Doc. No. 20 at 4.) However, as the Court had repeatedly stated on the first teleconference, the terms of the settlement—as itemized in defense counsel's "attachment A"—were clear, unambiguous, and accurate. June Phillips's counsel again stated that the settlement agreement defense counsel had drafted was acceptable to June. (*Id.*; *id.* at 16.) However, Jeffrey wanted to "clarify" whether the HOA's agreement to restore his access to the common RV parking lot included allowing him to park three non-RV vehicles that he had previously parked in that lot in violation of the HOA rules. The revisions to the settlement agreement that he had proposed inserted this additional provision, which, as defense counsel correctly noted, was never discussed as part of the settlement of this case. (*Id.* at 14:18-22.) Defense counsel also reassured Jeffrey that this settlement does not bar any future claims—only past claims—and appeared confident the parties could sign the settlement agreement with these two items removed. The teleconference ended with this Court's heart *full* of hope . . . .

. . . . only to have those hopes dashed. Instead of a joint motion to dismiss, Defendant filed the instant motion to compel enforcement of the settlement. Plaintiff June Phillips joins Defendant's motion. (Doc. No. 37.)

## II. LEGAL STANDARD

A district court has the inherent power to enforce settlement agreements entered into by the parties in cases pending before it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Marks-Foreman v. Reporter Publ'g Co.*, 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998). This inherent authority applies to settlement agreements entered on the record but later reneged on by one party. *See Henderson v. Yard House Glendale*, LLC, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in

enforcing the settlement agreement after [Plaintiff] entered into it on the record in open court, but later refused to execute a formal agreement to dismiss the action. . . ."); *Ewing v. K2 Prop. Dev., LLC*, No. 16CV678-LAB(AGS), 2018 U.S. Dist. LEXIS 172810, at *6 (S.D. Cal. Oct. 4, 2018).

To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman*, 12 F. Supp. 2d at 1092. First, the settlement agreement must be complete. *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137 (9th Cir. 2002)). Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Marks-Foreman*, 12 F. Supp. 2d at 1092 (citing *Harrop v. Western Airlines*, Inc., 550 F.2d 1143, 1144-45 (9th Cir. 1977), *Doi*, 276 F.3d at 1137-38). Where parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *Harrop*, 550 F.2d at 1144.

"Assessing the validity of a settlement agreement . . . is a question of state contract law." *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks and citation omitted)). Under California law, a valid contract requires parties capable of contracting, consent, a lawful object, and consideration. Cal. Civ. Code § 1550; *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004). "[U]nless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general."[2] *Nicholson v. Barab*, 233 Cal. App. 3d 1671, 1681 (Cal. Ct. App. 1991); *see id.* at 1682 (listing

---

[2] Here, California's statute of frauds, California Civil Code section 1624, is not applicable because the alleged oral agreement is not one of the seven types of contracts listed in section 1624 as "invalid" without a writing. Thus, the oral agreement on the record is enforceable without a writing.

8

19-CV-102-AJB(WVG)

California cases in which out-of-court oral settlement agreements were found to be enforceable).

## III. DISCUSSION

**A. The Terms of the Settlement Entered on the Record Should Be Enforced and Judgment Should be Entered**

There is no question that all parties to this case resolved this matter on the terms set forth on the record and as reflected in the settlement agreement and its "attachment A." There is also no question that they did so knowingly, voluntarily, and with full knowledge of the facts and circumstances necessary to enter into settlement. Accordingly, the settlement should be enforced and final judgment should be entered. The Court now addresses each of the elements of a binding contract under California Civil Code section 1550, which requires a valid contract to have parties capable of contracting, consent, a lawful object, and consideration.

### 1. Parties Capable of Contracting

Pursuant to California Civil Code section 1556, all persons are capable of contracting "except minors, persons of unsound mind, and persons deprived of civil rights." None of these exceptions apply here.

### 2. Mutual Assent

"Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (Cal. Ct. App. 2015) (citations and internal quotations omitted).

Applying this objective standard, the Court finds the parties mutually manifested assent to settle this case on the terms put on the record before this Court on three separate occasions. On March 18, 2019, both Plaintiffs, Defendant, and their attorneys participated on a teleconference before this Court and memorialized the non-monetary terms of the settlement. (*See* Doc. No. 10.) This Court recited the essential non-monetary terms of the

9

settlement, and all parties and counsel stated they understood those terms. All parties, including Jeffrey Phillips, then expressly and unequivocally agreed to be bound by those terms to settle this case.

On May 19, 2019, all parties and their attorneys appeared in person for a second Early Neutral Evaluation conference. After arms-length negotiations before this Court, the parties agreed to additional settlement terms, which were then placed on the record before this Court. (*See* Doc. No. 16.) These terms included a final calculation of $1,800 in past fees that would be reimbursed to Plaintiffs, an agreement that the HOA would no longer issue violation notices for potted plants or trees on Plaintiffs' property, that there would be no future retaliation by the HOA, and that the HOA could enforce its rules in the future as it would against any other homeowner who violated the rules. Plaintiffs both confirmed they understood and were satisfied with these clarified terms.

On September 10, 2019, this Court convened a teleconference on which all parties and their attorneys appeared.[3] Defense counsel recited the essential monetary terms of the settlement and clarified details of certain non-monetary terms. All parties and counsel then stated they understood those terms, and the parties—including Jeffrey Phillips—agreed to be bound by those terms to settle this case. (Doc. No. 25 at 5-6.) Notably, the terms placed on the record during the prior two conferences were incorporated by references into this third conference, and this Court expressly confirmed Jeffrey (1) understood that the terms were being incorporated, (2) that he understood those prior terms, and (3) that he once again agreed to be bound by those prior terms. (*Id.* at 5:14-25.) Jeffrey affirmatively and unequivocally answered all three of these inquiries. (*Id.* at 5:20, 5:22, 5:25.)

Briefly stated, there can be no clearer objective manifestation of assent than what transpired here: a party stating on the record on multiple occasions that he understood terms

---

[3] At the time of the first two settlements on the record, attorney Derby represented both June and Jeffrey Phillips. However, counsel for June Phillips had previously withdrawn as Jeffrey's attorney, and Jeffrey was representing himself during this teleconference.

1 and agreed to be bound by them. There can be no doubt that Jeffrey expressly and objectively manifested his assent to all of the non-monetary terms.

Jeffrey now contends this settlement should not be enforced because the terms he agreed to are not reasonable accommodations that remedy the ADA issues raised in the complaint. This argument is simultaneously false and a red herring. Jeffrey's argument is false because the specific accommodation he references—the reserved parking space he claims is too far from his mother's house—in fact accommodates the Phillips household by allowing the parking of a single car in a two-car garage, which in turn allows June Phillips the ability to more comfortably enter and exit a car in the garage. Defendant granting the Phillips household its own reserved parking spot directly relates to the Complaint's allegation that "[o]n November 1, 2016, Plaintiff JUNE PHILLIPS provided a doctor's note via email to the HOA asking for reasonable accommodation to park one of the vehicles on the street." (Doc. No. 1 at ¶ 11.) As Plaintiffs explained to this Court during settlement discussions, the reason an outside-of-the-garage parking spot was needed was to allow for June to enter and exit a car inside the garage with ease. The reserved parking spot directly addresses and fulfills this need and allegation. Jeffrey, however, is now displeased with the distance the parking space is from his mother's home, where he has lived for several years. That distance, however, was a readily-available fact he was fully aware of during settlement discussions since he knew where his mother's house was located in relation to the proposed parking spot. He agreed to the settlement term knowing full well the distance between his mother's home and the proposed parking spot.

Jeffrey's argument is also a red herring for two reasons. First, settlement terms need not necessarily tie directly to the gravamen of a complaint. Parties can come to any mutually-agreeable terms to settle and resolve a case without further litigation. Jeffrey's contrived argument now is simply a result of his ex-post facto dissatisfaction about not extracting everything he wanted from Defendant. That, however, is no reason to invalidate such a clearly-binding settlement. Second, the distance of the parking spot from the house is wholly irrelevant. The parking spot term is in fact a reasonable accommodation *for June*

*Phillips* because it allows her to park one car in her home's garage and thus provides her the ability for easier entry and exit of that car. Accordingly, regardless of where the reserved parking spot is located, *June* Phillips—the only person the Complaint hints needs accommodation—*has* been accommodated. Jeffrey may not enjoy the walk to his new reserved parking spot, but that is irrelevant since the Complaint never alleged *he* was in need of such an accommodation. (*See* Doc. No. 1 ¶ 11.)[4]

Because the parties clearly expressed their mutual assent before this Court and on the record, there is no doubt they each expressly manifested their assent to settle this case and that the above terms were the essential and material terms to which both parties assented.

### 3. Lawful Object

The object of the settlement is lawful as it requires Defendant to make a settlement payment and agree to various non-monetary terms in exchange for Plaintiffs' release of their claims against Defendant in the instant case. *See Madani v. Cty. of Santa Clara*, 2019 U.S. Dist. LEXIS 16736, at *21 (N.D. Cal. Jan. 31, 2019) (settlement payment in exchange for release of claims is a lawful object of settlement agreement).

### 4. Consideration

Finally, the settlement is supported by consideration. Consideration is satisfied when a party (1) confers or agrees to confer a benefit on a party not entitled to that benefit, or (2) suffers or agrees to suffer a prejudice that a party is not legally bound to suffer. Cal. Civ. Code § 1605; *see* 1 Witkin, Summary 11th Contracts § 202 (2018) ("Consideration may be an act, forbearance, change in legal relations, or a promise."). Here, the settlement requires Defendant to pay Plaintiffs a settlement payment. Plaintiffs have also secured

---

[4] Yes, Paragraph 10 of the Complaint loosely alleged that "Plaintiffs" made written requests for the parking accommodation, but Paragraph 11 is the only allegation that references who actually needed that accommodation. To this day, this Court is unclear what the basis for Jeffrey's need for any accommodation is, and the Complaint certainly does not contain any basis for such a claim.

various non-monetary benefits they sought and vigorously fought for. In exchange, Plaintiffs will dismiss the case. Therefore, the settlement is supported by consideration. *Madani*, 2019 U.S. Dist. LEXIS 16736, at *24 (settlement supported by consideration where it required settlement payment in exchange for dismissal of lawsuit).

**B.     The Settlement Agreement is Complete; An Evidentiary Hearing is Not Required or Necessary Under the Circumstances Here**

The Ninth Circuit has cautioned that district courts "may enforce only complete settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "A complete agreement is "one where the parties have manifested their mutual assent to all the material terms." *Lee v. Retail Store Emple. Bldg. Corp.*, No. 15CV4768-LHK, 2018 U.S. Dist. LEXIS 5707, at *13 (N.D. Cal. Jan. 10, 2018) (citation and quotations omitted). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890 (citations omitted). The Court must hold an evidentiary hearing "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute . . . ." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original).

Here, there can be no dispute what the material terms of the agreement were or whether the parties assented to them. Unlike other cases where settlement is reached out of court and a dispute exists over what exactly the parties agreed to, there can be no such dispute here. The Ninth Circuit's opinion in *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002) is directly on point:

> In the typical case when one party seeks to enforce a settlement agreement against another, parties exchange phone calls and e-mails, and perhaps even drafts of a settlement agreement, outside of court. At some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees. We can understand how a party could dispute having made a binding agreement in such a case.
>
> This, however, is not the typical case. Rather, here, the plaintiff made a binding settlement agreement in open court: when read the terms of the agreement, and asked if she agreed with them, Doi simply responded, "yeah."

> At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation.
>
> Thus, we cannot say that the district court abused its discretion by finding that Doi's response in open court, after the terms of the settlement agreement were recited, constituted a binding agreement to settle.

*Doi*, 276 F.3d at 1141. When both the terms of the settlement and the parties' mutual assent thereto is clear, an evidentiary hearing is not required. *Id.* at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

Here, as in *Doi*, both the terms of the settlement and the parties' mutual assent to those terms are crystal clear and on the record before this Court *on multiple occasions*. Accordingly, there is no need to hold an evidentiary hearing here.

**C.      Judgment Should Be Entered Instead of Ordering Signing of the Agreement**

Defendant requests an Order from the Court compelling Jeffrey Phillips to sign the settlement agreement submitted as exhibit 1 to Burfening's declaration in support of Defendant's motion. (Doc. No. 29-1 at 10-17.) However, given this Court's extensive experience with Jeffrey Phillips, it is abundantly clear that requiring him to sign a settlement agreement will only lead to further unjustified, frustrating delay as he continues to quibble about immaterial matters and conjure up further obstacles to resolution of this case. Instead, this Court respectfully urges the Court to reduce the settlement agreement to judgment, enter the judgment, and terminate this case. Other courts have entered judgment upon enforcing settlement agreements.

Most notably, the Ninth Circuit Court of Appeals upheld a district court's entry of judgment in a case starkly on all fours with the instant case. In *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002), the parties had entered into a settlement before the district

14

court, and the terms were orally placed on the record. The plaintiff then refused to sign the settlement agreement. Without first holding an evidentiary hearing, the district court eventually found that the settlement agreement was binding and enforceable. The district court also found sanctions and attorneys' fees were in order. And the court ultimately entered judgment and dismissed the case with prejudice. The Ninth Circuit upheld the district court's order in its entirety. *Doi* is directly on point—all of the circumstances that led to the district court's actions there are present in this case. As the district court did in *Doi*, the Court here should enter judgment as well. In addition to the district court in *Doi*, other courts have entered judgment upon enforcing settlement agreements. *See, e.g.*, *Shandong Wanbao Grp. Co. v. reRubber LLC*, No. 16CV765-VAP-DTBx, 2019 U.S. Dist. LEXIS 152453 (C.D. Cal. Sep. 5, 2019) (finding the parties had entered into a binding settlement agreement to have judgment entered for $5,000,000 and reducing the agreement to judgment after the defendants failed to make a payment); *Above the Ceiling, LLC v. W. Architectural Servs.*, No. 15CV1766-JAD-GWF, 2019 U.S. Dist. LEXIS 118290 (D. Nev. June 27, 2019) (recommending granting the plaintiff's motion to enforce a settlement agreement and reducing to judgment a $275,000 settlement secured via e-mail communications between the parties), adopted by *Above the Ceiling, LLC v. W. Architectural Servs.*, No. 15CV1766-JAD-GWF, 2019 U.S. Dist. LEXIS 117839 (D. Nev. July 16, 2019); *Holabird v. Kagin*, No. 14CV262-HDM-CBC, 2018 U.S. Dist. LEXIS 223634, at *30 (D. Nev. Dec. 18, 2018) (finding the defendants had breached the settlement agreement and that the breach had caused $499,210.10 in damages and recommending that judgment be entered in this amount in favor of the plaintiffs), adopted by *Holabird v. Kagin*, No. 14CV262-HDM-CBC, 2019 U.S. Dist. LEXIS 66546 (D. Nev. Apr. 17, 2019); *United States v. Bauer*, No. CV-17-08049-PCT-JJT, 2018 U.S. Dist. LEXIS 174327 (D. Ariz. Oct. 10, 2018) (finding the parties had entered into a binding settlement and reducing the settlement agreement to judgment.); *Timmon v. Invest Inself, L.L.C.*, No. 17CV11035, 2018 U.S. Dist. LEXIS 92864 (E.D. Mich. May 8, 2018) (recommending reduction to judgment of an oral settlement agreement made on the record), adopted by *Timmon v.*

*Invest Inself, Ltd. Liab. Co.*, No. 17-11035, 2018 U.S. Dist. LEXIS 90632 (E.D. Mich. May 31, 2018) (imposing sanctions and attorneys' fees and reducing both to judgment).

Entry of judgment here is warranted because Plaintiff Jeffrey Phillips has failed to act in good faith in executing the written settlement agreement and allowing the parties to proceed to file a joint motion to dismiss. Ordering Jeffrey Phillips to sign the settlement agreement is highly likely to lead to his failure to do so and will only lead to future wasteful proceedings before the Court. This Court has now held three settlement conferences and then spent multiple additional hours in teleconferences attempting to convince Jeffrey to cooperate with a settlement that he very clearly entered. These efforts have been to no avail and have consistently been met by Jeffrey's refusal to listen to logic and acknowledge reality. Compelling him to sign a settlement agreement is not likely to be a successful path forward. Accordingly, the Court has the following two options.

First, the Court could append the settlement agreement and its attachment A to any judgment. *See, e.g.*, *Harris v. JT Hosp., Inc.*, No. 16CV4392-BLF, 2018 U.S. Dist. LEXIS 82255, at *8-15 (N.D. Cal. May 15, 2018). Although the settlement agreement attached to the judgment in *Harris* had been executed by the parties here, everyone (except Jeffrey Phillips)—Defendant, Plaintiff June Phillips, and this Court—agrees that the proposed settlement agreement and its attachment accurately reflect the terms of the oral settlements on the record. And although the parties did not specifically place the remaining terms in the proposed settlement on the record, those terms are standard, uncontroversial provisions included in nearly all written settlement agreements. These were precisely the circumstances in *Doi*, where the district court enforced the written settlement agreement that the plaintiff refused to sign after entering an oral agreement on the record. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002). The Ninth Circuit affirmed after finding that the written settlement agreement contained no provisions that were contrary to the oral settlement. *Id.*

Second, and in the alternative, the Court could enter judgment on the nine terms placed on the record before this Court as enumerated on pages 2 through 4 of this R&R.

However, this route would result in injustice, as it would divest Defendant and Plaintiff June Phillips of the benefits and full force of the written settlement agreement and would reward Jeffrey Phillips for his unjustified obstinance. Given that the first option above has been sanctioned by the Ninth Circuit, that option is seemingly far superior to entering judgment on only the oral settlement.

**D.    Sanctions**

Both sides have requested sanctions. Defendant seeks $3,150 "for the extraordinary delay caused by Pro Se Plaintiff Jeffrey Philips" and $1,260 in attorneys' fees for having to bring the instant motion. (Doc. No. 29 at 2.) Seemingly mimicking Defendant's efforts, Plaintiff Jeffrey Phillips seeks $8,000 in sanctions and $8,000 for fees. Jeffrey's requests are patently baseless and untethered to reality, as his obstinance is the sole reason Defendant was forced to spend so many needless hours attending additional settlement talks and to bring a plainly meritorious motion to enforce the settlement. Jeffrey's request for sanctions is so ludicrous that it deserves no further discussion.

Defendant's requests, however, are more than justified and warranted. This was not a complicated case, but it was made unduly contentious and burdensome solely because of Jeffrey Phillips's manipulation and hijacking of the settlement process. He has at every turn quibbled over minutiae, delayed, and frustrated the resolution of this case, and his ultimate act of obstinance has been his steadfast refusal to sign a clearly accurate settlement agreement and now his demand that that same agreement be nullified. But-for Jeffrey's conduct, this simple case should have—and would have—been terminated pursuant a joint motion to dismiss months ago. Accordingly, Jeffrey's conduct warrants sanctions and an award of the modest attorneys' fees Defendant requests. *See Doi v. Kelekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (affirming district court's award of $1,000 in sanction for the plaintiff's "unreasonable failure to sign the written [settlement] agreement."); *Timmon v. Invest Inslef, Ltd. Liab. Co.*, No. 17-11035, 2018 U.S. Dist. LEXIS 90632 (E.D. Mich. May 31, 2018) (imposing sanction and attorneys' fees and reducing both to judgment).

17

19-CV-102-AJB(WVG)

The Court should find that defense counsel's hourly rate and the time necessitated to bring the instant motion in response to Jeffrey's Phillips's antics are eminently reasonable.

### IV. CONCLUSION

In sum, the parties here entered into a complete settlement agreement after arms-length negotiations while represented by counsel.[5]  They then clearly memorialized their understanding of—and consent to—those terms on the record before this Court.  At that point, they entered into a binding contract.  This Court accordingly RECOMMENDS enforcing the settlement, imposing sanctions against Plaintiff Jeffrey Phillips, awarding attorneys' fees to Defendant, and entering final Judgment as recommended above.

**IT IS ORDERED** that no later than **March 19, 2020** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to objections shall be filed with the Court and served on all parties no later than **March 31, 2020**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *Martinez v. Ylst*, 951 F2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: March 2, 2020

Hon. William V. Gallo
United States Magistrate Judge

---

[5] Jeffrey Phillips was represented by counsel at the time he agreed to the non-monetary terms.  He was not represented by counsel when the monetary terms were placed on the record, but those terms are not in dispute.