UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PHILLIPS et al.,<br><br>                                         Plaintiffs,<br><br>v.<br><br>PILGRIM CREEK ESTATES<br>HOMEOWNERS ASSOCIATION,<br>                                         Defendant. | Case No.:  19-CV-0102-AJB(WVG)<br><br>**ORDER:**<br><br>**(1) ADOPTING THE REPORT AND RECOMMENDATION, (Doc. No. 41);**<br><br>**(2) GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT, (Doc. No. 29);**<br><br>**(3) IMPOSING SANCTIONS AGAINST PLAINTIFF JEFFREY PHILLIPS; AND**<br><br>**(4) ENTERING JUDGMENT** |

Presently before the Court is Defendant Pilgrim Creek Estates Homeowner Association's ("Defendant") motion to enforce settlement agreement. (Doc. No. 29.) The matter was fully briefed. (Doc. Nos. 36–38.) Plaintiff June Phillips ("June")—without Plaintiff Jeffrey Phillips ("Jeffrey")—joined in Defendant's motion to enforce settlement agreement. (Doc. No. 37.) Pursuant to 28 U.S.C. § 636(b)(1), Judge William V. Gallo submitted a report and recommendation ("R&R") to this Court on March 2, 2020,

recommending "the Court grant Defendant's motion without an evidentiary hearing, impose sanctions, award attorneys' fees, enter final Judgment, and close the case." (Doc. No. 41 at 1.) Plaintiff Jeffrey objected to the R&R.[1] (Doc. No. 54). Plaintiff June did not file objections. After careful consideration of the pleadings and briefs submitted by the parties, and for the reasons set forth below, the Court **OVERRULES** Plaintiff's objections, and **ADOPTS** Judge Gallo's R&R in its entirety.

## I.    BACKGROUND

Plaintiffs Jeffrey, along with his mother, Plaintiff June are disabled individuals suffering from mobility impairments. (Complaint, Doc. No. 1, ¶ 4.) Defendant is a senior citizen housing community. Jeffrey is the owner of a home within the housing community, and resides within the community to assist his mother, June. Plaintiffs filed this action under the Fair Housing Act, California Fair Employment and Housing Act, and the Unruh Act, alleging Defendant: (1) refused to provide Plaintiffs reasonable accommodations to allow them to park vehicles overnight on the street, and (2) retaliated against Plaintiffs for placing the requests. (*Id.* ¶ 1.)

Both June and Jeffrey were initially represented by the same attorney until August 8, 2019, when the Court granted counsel's motion to withdraw as to Jeffrey only. (Doc. No. 22.) Counsel continues to represent June. Since the withdrawal, Jeffrey has proceeded pro se in this matter. Prior to the withdrawal, counsel represented Jeffrey during two settlement conferences on March 18, 2019 and May 9, 2019. (Doc. No. 41 at 2.)

### A.    The First Settlement Conference on March 18, 2019

On March 18, 2019, Judge Gallo held a settlement conference in-person, which was attended by all the parties. (Doc. No. 7.) The parties—including Jeffrey—negotiated a partial settlement of the case, agreeing to certain non-monetary terms. The Court placed

---

[1] The Court notes that Plaintiff contacted chambers on June 25, 2020 to request a hearing date for a motion for leave to file amended objections to the R&R. The Court provided Plaintiff with a hearing date of September 10, 2020. However, September 10, 2020 has come and gone, and Plaintiff did not file his motion with the Court.

2

the terms of that settlement on the record, the transcript of which appears on the docket as docket entry number 10. After listing the non-monetary terms, Judge Gallo confirmed that all parties understood the terms and agreed to be bound by them. Specifically, Jeffrey stated he understood and agreed to be bound by the terms. (Doc. No. 10 at 12:2-8.)

### B.   The Second Settlement Conference on May 9, 2019

Because the parties only partially settled on the non-monetary terms at the first settlement conference, Judge Gallo held a second settlement conference on May 9, 2019 with all parties present again, including Jeffrey. (Doc. No. 11.) Although the parties did not agree to monetary settlement terms, the parties addressed issues that had come up with the delayed implementation of some of the non-monetary terms from the first settlement conference. The parties negotiated further resolution of these terms, and the Court placed the clarified terms on the record. (*See* Doc. No. 16.) At this second settlement conference, Jeffrey again expressly stated his understanding of the terms, and agreement on the record. (Doc. No. 16 at 7–8.)

### C.   The Third Settlement Conference on September 10, 2019

Judge Gallo convened a third in-person settlement conference on September 10, 2019, and all parties, including Jeffrey, were again present. (*See* Doc. No. 25.) At this conference, the parties agreed to monetary terms to complete the resolution of this case. Judge Gallo specifically addressed Jeffrey to confirm that he understood the monetary terms of the Settlement Agreement, that the global settlement included the non-monetary terms reached in the two prior settlement conferences, that he agreed to be bound by all of these terms, and that by agreeing to these terms the litigation would be concluded. (*Id.* at 5–6.) In each instance, Jeffrey stated that he understood and agreed to the monetary and non-monetary terms. (*Id.*) However, despite expressly and unequivocally agreeing to the global terms, Jeffrey refused to sign the Settlement Agreement, urging that the terms should be modified. (Doc. No. 41 at 4–5.)

### D.   The Settlement Disposition Conference on October 29, 2019

Judge Gallo then held a settlement disposition conference on October 29, 2019 to

3

inquire into the delay in finalizing settlement and filing a joint motion to dismiss the case. (Doc. No. 26.) Defendant and Jeffrey's mother, Plaintiff June both agreed that the Settlement Agreement completely and accurately reflected the terms agreed to by the parties in Court. However, Jeffrey continued to argue that the terms should instead be altered. (Doc. No. 41 at 5.) To resolve this stalemate, Defendant created a comprehensive list of the nine terms agreed to by all parties at the multiple settlement conferences. This list was attached to the Settlement Agreement as "Attachment A." ("Attachment 'A' to Settlement Agreement and Release Agreement," Ex. 1 to Burfening Declaration, Doc. No. 29-1 at 17.) Plaintiff June confirmed that Attachment A correctly and completely reflected the settlement terms placed on the record by the Court. Judge Gallo also reviewed each of these terms on the record and confirmed that Attachment A accurately recited the terms reached before the Court. (*Id.* at 35–39.) Judge Gallo then set a deadline to file a joint motion to dismiss.

### E.   The Second Settlement Disposition Conference on November 18, 2019

On November 18, 2019, Judge Gallo held yet another settlement disposition conference. There, Jeffrey sought to modify the settlement terms, and sought numerous "clarifications" as to the terms. (Doc. No. 41 at 7.) At this conference, Plaintiff June again expressed that the settlement terms were acceptable to her. (*Id.* at 2.) However, Jeffrey has still refused to sign the Settlement Agreement. Thus, Defendant filed a motion to compel enforcement of the settlement agreement on November 25, 2019. (Doc. No. 29.) Plaintiff June also joined Defendant's motion. (Doc. No. 37.) Judge Gallo issued an R&R on the motion to enforce on March 2, 2020. (Doc. No. 41.) Jeffrey filed objections to the R&R, while June did not object. (Doc. No. 54.) Defendant replied to the objections. (Doc. No. 55.) This order follows.

## II.   LEGAL STANDARD

The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a de novo determination of those portions of the report . . . to which objection

is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* When no objections are filed, a district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). In addition, "a district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).

## III.   DISCUSSION

### A.   Defendant's Motion to Enforce

Under federal law, the Court has inherent authority to enforce a settlement agreement in an action pending before it. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). This inherent authority applies to settlement agreements entered on the record but later reneged on by one party. *See Henderson v. Yard House Glendale*, LLC, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in enforcing the settlement agreement after [Plaintiff] entered into it on the record in open court, but later refused to execute a formal agreement to dismiss the action. . . ."). To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994). Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir. 1977).

As correctly explained by Judge Gallo in the R&R, it is crystal clear that the Settlement Agreement is a complete agreement, agreed to by all the parties to the litigation. The terms of the settlement, memorialized in writing by defense counsel, mirrors the monetary and non-monetary terms agreed to by all the parties at the settlement conferences on March 18, 2019, May 9, 2019, and September 10, 2019 before Judge Gallo. To be sure, the Court cites verbatim from the Official Court Transcript of the global settlement

conference on September 10, 2019, confirming both that the Settlement Agreement terms incorporates all terms agreed to at the March and May settlement conferences, and are a full and complete resolution of the case:

> THE COURT: Okay. I understand the parties have reached a resolution of this case to resolve it in its entirety. I am going to incorporate by reference the two previous settlement discussions that we've had on the record from March 18th, as well as May the 9th. Those agreements will be incorporated by reference here today.
>
> . . .
>
> THE COURT: All right. And Mr. Phillips, do you understand the terms of the resolution that was reached today, as well as --
> MR. PHILLIPS: Yes.
> THE COURT: -- incorporating the terms from our prior two discussions in March and in May?
> MR. PHILLIPS: Yes, Your Honor.
> THE COURT: And do you understand those terms?
> MR. PHILLIPS: Yes, Your Honor.
> THE COURT: And do you agree to be bound by those terms?
> MR. PHILLIPS: I do, Your Honor.
> THE COURT: And do you understand that by agreeing to those terms, it will conclude this litigation today?
> MR. PHILLIPS: Yes, your Honor.
> THE COURT: All right.

(Doc. No. 25 at 3:8–14; 5:14–6:4.)

At this point of the litigation, Jeffrey was proceeding pro se, and there is no question as to his assent to the terms that he himself negotiated and agreed to. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) ("Any question as to [the plaintiff's] intent to be bound was answered when she appeared in open court, listened to the terms of the agreement placed on the record, and when pressed as to whether she agreed with the terms, said 'yeah.'"). In addition to confirming whether Jeffrey understood and accepted these terms, Judge Gallo also confirmed that these terms were acceptable to June, (*see id.* at 4:21–5:13), and to Jim Burbidge, the President of Defendant Pilgrim Creek Estates

6

19-CV-0102-AJB(WVG)

Homeowner's Association, (*see id.* at 6:9–7:7). The Court is hard-pressed to find a clearer articulation of a complete and accurate Settlement Agreement than this Settlement Agreement agreed to by all parties in open court and on the record.

Jeffrey's objections to the R&R do not compel a contrary conclusion. First, in his objections to the R&R, Jeffrey again expresses dissatisfaction at his designated reserved parking spot, arguing that the parking spot is 600 feet away from his mother's house. (Doc. No. 54 at 7.) But Jeffrey does not argue that this term is somehow inconsistent with the terms agreed to on the record. *See Doi*, 276 F.3d at 1140 ("Further, [the plaintiff] has failed to demonstrate how any of the terms of the written settlement agreement are in discord with the terms of the agreement stated in open court."). For example, Jeffrey does not argue that in open court, he only agreed to a parking spot which was 200 feet away, but yet the written Settlement Agreement now reflects a parking spot which is 600 feet away. As aptly explained by Judge Gallo, that distance "was a readily-available fact he was fully aware of during settlement discussions since he knew where his mother's house was located in relation to the proposed parking spot." (Doc. No. 41 at 11.) Jeffrey was provided with ample opportunity to object to this term, or to renegotiate this term. He did not do so. Instead Jeffrey agreed in open court, on the record, that the settlement terms were acceptable to him. (Doc. No. 25 at 3:8–14; 5:14–6:4).

Second, in his objection to the R&R, Jeffrey wants the settlement terms to provide him with the ability to park non-RV vehicles in the RV lots. (Doc. No. 54 at 7–8.) However, this proposed additional term was not part of settlement discussions, and is an attempt to unravel the hours of settlement negotiations already engaged by all parties. *See Doi*, 276 F.3d at 1141 ("At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits [him].").

Lastly, Jeffrey objects to the R&R stating that he understood the settlement was only a partial settlement, (Doc. No. 54 at 8), and that not all material terms and elements were

discussed and clarified at the settlement conferences, (*id.* at 8–9.) But this assertion is belied by the record before the Court. As explained above, at the September 10, 2019 settlement conference before Judge Gallo, Jeffrey confirmed multiple times he understood that the terms incorporated all prior settlement conferences, that he accepted those terms, and that the settlement would end the litigation. (Doc. No. 25 at 3:8–14; 5:14–6:4.) Jeffrey's claim today that he did not understand the settlement to be a full and complete settlement strains credulity.

**B.     The Court Need Not Hold an Evidentiary Hearing, Judgment Should Be Entered, and Sanctions Imposed**

Jeffrey's objections to the R&R do not contain any meaningful opposition to the Magistrate Judge's conclusion that: (1) the Court need not hold an evidentiary hearing, (2) that judgment should be entered instead of compelling Jeffrey to sign the Settlement Agreement, (3) that sanctions and attorneys' fees be imposed against Jeffrey. Having reviewed these portions of the R&R, the case law contained therein, and the objection and reply, the Court concludes that the R&R is thorough, well-reasoned, and contains no clear error.

First, there is no need to hold an evidentiary hearing because the terms of the settlement and the parties' assent to those terms cannot be any clearer. *See Doi*, 276 F.3d at 1139 ("[T]here was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court.").

Second, reducing the Settlement Agreement to judgment—instead of compelling Jeffrey's signature—is appropriate in the interests of justice and the conservation of judicial resources. As stated by the Magistrate Judge, entry of judgment is warranted because Jeffrey has failed to act in good faith in executing the written settlement agreement and prevented the parties—including his mother, Plaintiff June—from jointly dismissing the case. *See, e.g., Shandong Wanbao Grp. Co. v. reRubber LLC*, No. 16CV765-VAP-DTBx, 2019 U.S. Dist. LEXIS 152453 (C.D. Cal. Sep. 5, 2019) (finding the parties had entered into a binding settlement agreement to have judgment entered for $5,000,000 and

8

reducing the agreement to judgment after the defendants failed to make a payment).

Third, Judge Gallo appropriately recommends the imposition of sanctions against Jeffrey because "[t]his was not a complicated case, but it was made unduly contentious and burdensome solely because of Jeffrey Phillips's manipulation and hijacking of the settlement process." (Doc. No. 41 at 17). The Court has held numerous settlement conferences and has spent multiple additional hours in teleconferences as a result of Jeffrey's bad faith delay tactics. Defendant seeks $3,150 "for the extraordinary delay caused by Pro Se Plaintiff Jeffrey Philips" and $1,260 in attorneys' fees for having to bring the motion to enforce the settlement agreement. (Doc. No. 29 at 2.) In his declaration, defense counsel Peter Burfening explains that he has spent at least 15 hours responding to and attending additional hearings with this Court as a result of Jeffrey's bad faith conduct in refusing to sign the Settlement Agreement. (Doc. No. 29-1 ¶ 41.) Burfening also states he spent an additional six hours preparing the motion to enforce settlement agreement. With an hourly rate of $210, (*id.* ¶ 42–43), the Court finds Defendant's request reasonable and appropriate. *See Doi*, 276 F.3d at 1138 (affirming district court's award of $1,000 in sanction for the plaintiff's "unreasonable failure to sign the written [settlement] agreement.").

## IV.   CONCLUSION

Based on the foregoing, the Court accordingly:

(1) **ADOPTS** the R&R in its entirety, (Doc. No. 41).

(2) **GRANTS** Defendant's motion to enforce settlement agreement without an evidentiary hearing, (Doc. No. 29).

(3) **IMPOSES** sanctions against Plaintiff Jeffrey Phillips, awarding attorneys' fees to Defendant in the amount of $3,150 for the extraordinary delay caused by Plaintiff Jeffrey Philips, and $1,260 for Defendant having to bring the motion to enforce.

(4) **ENTERS JUDGMENT** consistent with the terms of the parties' Settlement Agreement, (Doc. No. 29-1 at 10–17).

9

1        The Clerk of Court is **DIRECTED** to **ATTACH** the Settlement Agreement, Doc.

2    No. 29-1 at 10–17 to the **JUDGMENT** and **CLOSE** the case.

3        **IT IS SO ORDERED.**

4    Dated:  September 28, 2020

5    Hon. Anthony J. Battaglia

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28